UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FLOYD MANLOVE,<br><br>　　　　　　　　　　Plaintiff,<br><br>v.<br><br>COUNTY OF SAN DIEGO, et al.,<br><br>　　　　　　　　　　Defendants. | Case No.: 3:24-CV-0801-CAB-MMP<br><br>**ORDER GRANTING MOTIONS TO DISMISS**<br><br>[ECF No. 3, 14] |

Plaintiff Floyd Manlove brought a lawsuit pursuant to 42 U.S.C. § 1983 and other causes against the County of San Diego and known and unknown San Diego County Sheriff's Department Defendants. The County filed a motion to dismiss on behalf of itself and the ten Doe Defendants. [ECF No. 3.] The named individual Defendants—Deputies Olguin, Alcarion, Kunz, and Gonzales (Deputy Defendants)—filed a separate motion to dismiss (joined by the County). [ECF No. 14.] The Court **GRANTS** both motions with leave to amend.

I.  **FACTUAL ALLEGATIONS**

The Court takes the alleged material facts as true and construes them in the light most favorable to Plaintiff. *Stoner v. Santa Clara Cnty. Office of Educ.*, 502 F.3d 1116, 1120 (9th Cir. 2007). According to the complaint, on the evening of March 22, 2023 in

Spring Valley, CA, at least one Deputy Defendant apprehended Plaintiff while he was parked at a gas station. [Compl. ¶ 19.] Plaintiff admits that he lacked a front license plate in violation of California Vehicle Code 5200(A). [*Id.*] In apparent response, Deputy Olguin purportedly demanded that Plaintiff produce his state driver's license, a request Plaintiff pleads he satisfied. [*Id.* ¶ 20.] Plaintiff claims that he wore jeans and a sweater without any visible bulges in his clothing. [*Id.*]

Next, Plaintiff alleges that Deputy Olguin asked him to exit the vehicle without justification, upon which Plaintiff questioned the reasoning behind his request. [*Id.* ¶ 21.] According to Plaintiff, this exchange allegedly led to a dispute and to Deputy Olguin's attempt to reach into Plaintiff's car and open his door. [*Id.* ¶ 20.]. Plaintiff asserts that "unlawful and excessive force was applied to him" as he attempted to exit the vehicle by his own volition, and "shortly thereafter," Plaintiff "was pinned and brought down to the ground by at least [four] deputies." [*Id.* ¶¶ 21–23.] According to Plaintiff, as a result of this maneuver, he suffered injuries to his face, neck, and back. [*Id.* ¶ 25.] Though Plaintiff does not specify who arrested him, Plaintiff claims that he was placed under arrest after being subdued. [*Id.* ¶ 23.] The search of Plaintiff's person allegedly yielded a glass pipe, and the search of his vehicle, a collapsible baton. [*Id.* ¶ 24.].

Although Plaintiff refers to numerous officers in the factual core of his complaint, he assigns an explicit role to only Deputy Olguin. Besides naming them, Plaintiff does not plead any facts to specifically define the actions of Deputies Alcarion, Kunz, or Gonzales. Nor does he provide any facts about the role of any Doe Defendant.

## II. ANALYSIS

From the face of his complaint, Plaintiff presents five separate causes: (1) a 42 U.S.C. § 1983 claim against the Deputy Defendants and Does 1–5, (2) a Section 1983 *Monell* liability claim against the County of San Diego and Does 6–10, (3) a common law assault and battery action against the Deputy Defendants and Does 1–5, (4) a common law false arrest claim against the Deputy Defendants and Does 1–5, and (5) a claim under California Civil Code § 52.1 (the Bane Act) against the Deputy Defendants and Does 1–5.

At issue are the two motions to dismiss. Fed. R. Civ. P. 12(b)(6) permits a party to file a motion to dismiss for "failure to state a claim upon which relief can be granted." "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Vague and conclusory allegations" concerning government involvement in civil rights violations are insufficient to withstand a motion to dismiss. *Ivey v. Bd. Of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982). Since the filed motions—though overlapping—target different claims, the Court's analysis proceeds claim-by-claim.

**A. The Federal Claims Against the Doe Defendants Are Insufficiently Pleaded**

Plaintiff includes Doe Defendants in all his causes of action. As it relates to the 42 U.S.C. § 1983 claim and the related *Monell* claim, there are no facts indicating what involvement Does 1–10 had in any alleged constitutional violation.

"As a general rule, the use of 'John Doe' to identify a defendant is not favored." *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980) (citing *Wiltsie v. California Department of Corrections*, 406 F.2d 515, 518 (9th Cir. 1968)). To successfully plead a Section 1983 claim, Plaintiff must set forth facts that each defendant personally violated his constitutional rights. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). This requires an "individualized" assessment of causality to attribute conduct (or lack thereof) that allegedly forms the basis of a constitutional deprivation. *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988).

Plaintiff names four law enforcement personnel who were involved in the alleged takedown. [Compl. ¶ 23.] But he presents no facts, either for his traditional Section 1983 claim or his *Monell* liability claim, that indicate what Doe Defendants did, if anything, to contribute to the identified constitutional harms. Because Plaintiff fails to plead sufficient (or any) facts connecting Does 1–10 to any of the federal constitutional claims, the Court dismisses those claims against the Doe Defendants with leave to amend. *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998) ("A plaintiff must allege facts, not simply

conclusions, t[o] show that [each defendant] was personally involved in the deprivation of his civil rights.")

## B. Plaintiff Fails to State a Claim Under the Fourth and Fourteenth Amendments

To state a Section 1983 claim, a plaintiff must allege that: (1) a right secured by the Constitution or laws of the United States was violated, and (2) a person acting under the color of state law committed the alleged violation. *West v. Atkins*, 487 U.S. 42, 48 (1988). Plaintiff alleges two separate constitutional violations based on the Fourth and Fourteenth Amendments. But the eight paragraphs that form the "Factual Allegations" portion of the complaint specify only one Deputy Defendant's involvement in the alleged violations: Deputy Olguin. [*See generally*, Compl. ¶¶ 18-25.] In the "Cause of Action" section of his complaint, Plaintiff indicates that each Deputy Defendant was involved in the purported Section 1983 violations. [Compl. ¶ 27(a)]. To the extent possible, the Court construes the pleaded facts in the light most favorable to Plaintiff to make sense of who did what in the complaint. *See Stoner*, 502 F.3d at 1120.

### i.  Fourth Amendment Unlawful Search/Seizure

Plaintiff's first constitutional claim is an alleged violation of his Fourth Amendment rights: that the individually named Deputies "seized, searched, arrested, and handcuffed" the Plaintiff without probable cause. [*Id.* at ¶ 27(a).] "A claim for unlawful arrest is cognizable under § 1983 as a violation of the Fourth Amendment, provided the arrest was without probable cause or other justification." *Dubner v. City & Cnty. of San Francisco*, 266 F.3d 959, 964 (9th Cir. 2001). "Probable cause exists when, under the totality of the circumstances known to the arresting officers (or within the knowledge of the other officers at the scene), a prudent person would believe the suspect had committed a crime." *Id.* at 966. For purposes of the Fourth Amendment analysis, the Court breaks down the relevant allegations into four different steps: (1) the initial stop, (2) Plaintiff's arrest, (3) the search of his person, and (4) the search of the vehicle.

At the pleading stage, the Court looks to whether the Plaintiff has plausibly stated a claim: an exercise that draws on judicial experience and common sense. *Eclectic*

*Properties E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 995 (9th Cir. 2014). To plausibly state a claim under Section 1983, a plaintiff must specifically identify who caused that alleged violation: "[t]he inquiry into causation must be individualized to focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." *Leer*, 844 F.2d at 633. Although Plaintiff indicates that all the individually named Defendants "seized, searched, arrested, and handcuffed" him, [Compl. ¶ 27(a)], these are conclusory allegations that the Court cannot accept. *See id.* In the factual portion of his complaint, Plaintiff identifies only Deputy Olguin as involved in the traffic stop.

Nevertheless, Deputy Olguin's initial seizure passes constitutional muster. Though a bit vague, Plaintiff pleads that he was observed by the attending officer, Deputy Olguin, to be in violation of California law. Indeed, Plaintiff admits that he had no front license plate in violation of California Vehicle Code § 5200(a), a misdemeanor. [Compl. ¶ 19.] Thus, based on facts Plaintiff supplies, his traffic violation supports the initial stop. *Pennsylvania v. Mimms*, 434 U.S. 106, 109 (1977) (stating that a police officer who personally observes a traffic violation has probable cause to stop the vehicle and offending driver); *see People v. Saunders*, 136 P.3d 859, 863 (Cal. 2006) ("[T]he lack of a front license plate has long been recognized as a legitimate basis for a traffic stop.")

Next is the arrest. From the complaint, it is unclear who arrested Plaintiff. Plaintiff claims that "at least [four] deputies" threw him to the ground but does not specify who arrested him. [Compl. ¶ 23.] Construing the complaint in his favor, the Court infers (at the least) Deputy Olguin's involvement.

Looking to the Fourth Amendment conduct at issue, this is not a case where Plaintiff's pleaded facts attack the basis for the seizure. *But see*, *e.g.*, *McDonald v. Cnty. of Sonoma*, 506 F. Supp. 3d 969, 979 (N.D. Cal. 2020) (adopting the plaintiff's characterization of an arrest against a contested law enforcement incident report indicating plaintiff's noncompliance). Indeed, the facts alleged in his complaint undermine most of his unlawful arrest challenge as a matter of law. Under the Constitution, a warrantless

misdemeanor arrest supported by probable cause does not violate the Fourth Amendment. *See Barry v. Fowler*, 902 F.2d 770, 772–73 (9th Cir. 1990) (a warrantless misdemeanor arrest supported by probable cause satisfies the requirements of the Fourth Amendment). Indeed, the arrest occurred after Plaintiff questioned the reason for Deputy Olguin's request to exit the vehicle, sparking a dispute between Plaintiff and Deputy Olguin. [Compl. ¶ 21.]

The Court moves on to the search of Plaintiff's person which allegedly produced a glass pipe. Plaintiff has not identified who searched his person, much less how. [*See id.* ¶ 23.] That itself renders Plaintiff's claim defective: Plaintiff must specifically allege who (even if it is a Doe defendant) faces causal responsibility for the constitutional violation alleged. *See Leer*, 844 F.2d at 633. This is important in the Section 1983 context because "[t]here is no respondeat superior liability under [S]ection 1983." *See List*, 880 F.2d at 1045.

Nevertheless, given that Plaintiff's own facts show that the arrest was supported by probable cause, the search of Plaintiff's person incident to that arrest does not offend the Fourth Amendment. *See Chimel v. California*, 395 U.S. 752, 762–63, 89 (1969); *see also United States v. Ruckes*, 586 F.3d 713, 717 (9th Cir. 2009). Nor does Plaintiff provide any facts that indicate that the manner and means of the search rose to a Constitutional infraction. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 922 (9th Cir. 2001) (strip searches of persons arrested for minor offenses are prohibited by the Fourth Amendment without targeted reasonable suspicion). Plaintiff himself concedes the proper terminology: that the "search incident to arrest yielded a glass pipe." [Compl. ¶ 24.]

The final Fourth Amendment issue is the search of the vehicle. Again, Plaintiff does not provide sufficient facts to show which one of (or all, or how) the Deputies searched his vehicle. He alludes in conclusory fashion in his claim section of the complaint that all named Defendants had some involvement. [Compl. ¶ 27(a).]. This is insufficient to state a claim under Section 1983. *See Leer*, 844 F.2d at 633 (the causal "inquiry . . . must be individualized to focus on the duties and responsibilities of each individual defendant.") The conduct complained of may nevertheless pass Constitutional muster, since "[u]nder

the automobile exception to the warrant requirement, police may conduct a warrantless search of a vehicle if there is probable cause to believe that the vehicle contains evidence of a crime." *United States v. Brooks*, 610 F.3d 1186, 1193 (9th Cir. 2010). But the Court need not decide whether the vehicle search was unreasonable as Plaintiff has not pleaded the basic facts to plausibly sustain a Fourth Amendment violation on that ground.

The Court dismisses Plaintiff's Fourth Amendment Section 1983 claim in its entirety with leave to amend.

### ii.   14th Amendment Excessive Force Claim

Compared to his Fourth Amendment Claim, Plaintiff's facts supporting his excessive force claim boast greater clarity: he alleges that "at least" four officers, later identified as the named Deputy Defendants, pinned and brought Plaintiff to the ground. [Compl. ¶ 22.] He claims that the force from this maneuver led to injuries to his face, neck, and back. [*Id.* ¶ 25.] Plaintiff's theory is that this conduct violated his rights under the Fourteenth Amendment. [*Id.* ¶ 27(b).]

To bring a Fourteenth Amendment excessive force claim, a plaintiff must show that the officers' actions "'shock[ed] the conscience' and thus violated [plaintiff's] Fourteenth Amendment rights." *Ochoa v. City of Mesa*, 26 F.4th 1050, 1057 (9th Cir. 2022) (citing *Porter v. Osborn*, 546 F.3d 1131, 1137 (9th Cir. 2008). But this claim, which proceeds under a substantive due process theory, has been recognized in the Ninth Circuit in the context of a liberty interest held by the successors of a decedent involved in a law enforcement shooting. *See id.* A detainee-litigant may also proceed under the Fourteenth Amendment for an excessive force claim against prison officials. *See Kingsley v. Hendrickson*, 576 U.S. 389, 396–97 (2015). The Court is not aware, nor made so aware by the parties, of any cases in this Circuit that establish a free-standing Fourteenth Amendment excessive force claim to redress law enforcement conduct. The Court declines to extend the reach of due process under the Fourteenth Amendment where the Fourth Amendment clearly covers the scope of Plaintiff's allegations. *See Franceschi v. Yee*, 887 F.3d 927, 937 (9th Cir. 2018) (explaining that the "range of liberty interests" protected by

substantive due process is "narrow.")  Of course, fashioning a novel variation of the excessive force claim under the Fourteenth Amendment would leave no question as to whether qualified immunity applied.  *See Sandoval v. Cnty. of San Diego*, 985 F.3d 657, 672 (9th Cir. 2021) (clearly established law is narrowly defined).

Based on our precedents, the proper vehicle for an excessive force claim in the pleaded context is the Fourth Amendment.  *See Brosseau v. Haugen*, 543 U.S. 194, 197, (2004) (collecting cases showing that "claims of excessive force are to be judged under the Fourth Amendment's" objective reasonableness standard).  The analysis under the Fourth Amendment differs from the Fourteenth: the Court looks to whether the police conduct complained of is "objectively unreasonable" under the circumstances.  *See Ochoa*, 26 F.4th at 1057.  The Plaintiff never pleaded an excessive force claim under the Fourth Amendment, and the Deputy Defendants did not have a proper opportunity to brief a response to one.  Their motion to dismiss proceeds under the standard for the Fourteenth Amendment, while their reply imports case law pertaining to the Eighth Amendment.  [ECF Nos. 14; 16 at 3.]  To be fair, Plaintiff, in its response to the Deputy Defendants, raises (for the first time) the excessive force standard under the Fourth Amendment.  [ECF No. 15 at 7.]  But in his own pleading, Plaintiff complains of "the outrageous actions" attributable to Defendants—clearly tracking the "shocks the conscience" language expected in an analysis proceeding under the Fourteenth Amendment.  [Compl. ¶ 27(c).].

A bedrock principle governing a proper complaint is that it should provide notice.  *See* Fed. R. Civ. P. 8.  A pleading must allow a party opponent to provide a timely response and address the claimed infractions.  Because Plaintiff asserted his claim under the Fourteenth Amendment rather than the Fourth, Plaintiff has not met the imposed "requirement . . . that a pleading give 'fair notice' of the claim being asserted and the 'grounds upon which it rests.'"  *Yamaguchi v. United States Department of Air Force*, 109 F.3d 1475, 1481 (9th Cir. 1997).  As such, the Court dismisses the Plaintiff's Fourteenth Amendment excessive force claim under Rule 12(b)(6) with leave to amend.

### iii. Failure to Intervene Under the Fourth and Fourteenth Amendments

Plaintiff also alleges what appears to be constitutional violations based on a failure to intervene theory. Police officers have a duty to intervene when their fellow officers violate the constitutional rights of a citizen in their presence. *Cunningham v. Gates*, 229 F.3d 1271, 1289 (9th Cir. 2000). "Importantly, however, officers can be held liable for failing to intercede only if they had an opportunity to intercede." *Id.*; *see Bruner v. Dunaway*, 684 F.2d 422, 426–27 (6th Cir. 1982) (explaining that officers who were not present at the time of the alleged assault could not face liability for a Section 1983 action). Apart from the conclusory allegation that officers failed to intervene in contravention of his constitutional rights, Plaintiff identifies no facts indicating who failed to intervene, how, or whether anyone had the opportunity to intercede. Without these basic facts, Plaintiff cannot plead a constitutional claim based on the intervention theory. *Bd. Of Regents of Univ. of Alaska*, 673 F.2d at 268 ("[v]ague and conclusory" allegations supporting a Section 1983 claim are insufficient to clear a motion to dismiss).

The Court dismisses Plaintiff's failure to intervene clam with leave to amend.

### C. Plaintiff Has Not Plausibly Pleaded a *Monell* Liability Claim

Next is Plaintiff's *Monell* claim against the County. To survive a motion to dismiss on a traditional *Monell* liability theory, Plaintiff must allege that: (1) he was deprived of his constitutional rights by defendants and their employees acting under color of state law; (2) that the defendants have customs or policies which amount to deliberate indifference to his constitutional rights, and (3) these policies are the moving force behind the constitutional violations. *Lee v. City of Los Angeles*, 250 F.3d 668, 681–82 (9th Cir. 2001). "[A] bare allegation that the [individual officers'] conduct conformed to some unidentified government policy or custom" is insufficient to state a *Monell* claim. *A.E. ex rel. Hernandez v. County of Tulare*, 666 F.3d 631, 636 (9th Cir. 2012). Plaintiff appears to plead three variations on *Monell* liability: (1) an unwritten custom claim, (2) an omission claim, and (3) a failure to train claim. [*See generally* Compl. ¶¶ 30–45.] For the reasons

9

24-CV-0801-CAB-MMP

explained below, the Court dismisses each of these *Monell* liability claim theories with leave to amend.

### i.     **Longstanding Practice or Custom Theory**

Plaintiff has not alleged any specific formal policy to support his *Monnell* claim. Instead, he alleges the absence of such a policy. "Absent a formal governmental policy, [a plaintiff] must show a 'longstanding practice or custom which constitutes the standard operating procedure of the local government entity.'" *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) (quoting *Gillette v. Delmore*, 979 F.2d 1342, 1346 (9th Cir. 1992)). "The custom must be so 'persistent and widespread' that it constitutes a 'permanent and well settled city policy.'" *Id.* (quoting *Monell*, 436 U.S. at 691).

The extent of the pleaded facts are thin: apart from the one-off incident Plaintiff complains of, there are no allegations of any widespread or persistent custom that may rise to the level of policy. "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino*, 99 F.3d at 918; *see also Davis v. City of Ellensburg*, 869 F.2d 1230, 1233 (9th Cir. 1989) (a plaintiff "cannot prove the existence of a municipal policy or custom based solely on the occurrence of a single incident of unconstitutional action by a non-policymaking employee.").

Plaintiff merely pleads conclusory statements referencing "regularly established customs and practices" without providing a factual detail as to what those customs and practices remotely entailed. [Compl. ¶ 36.] The Court need not accept those conclusory allegations. *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) (a court is not required to accept conclusory allegations at the motion to dismiss stage). Plaintiff has not pleaded any widespread or persistent customs to assert *Monell* liability.

### ii.     **"Deliberate Indifference" Omission Theory**

Plaintiff also appears to allege an "omission" action. [Compl. ¶ 38.] Under Ninth Circuit precedent, "[a] policy of inaction or omission may be based on failure to implement

procedural safeguards to prevent constitutional violations." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1143 (9th Cir. 2012) (citing *Oviatt v. Pearce*, 954 F.2d 1470, 1477 (9th Cir. 1992)). In an "omission" action, a plaintiff must show that the municipality's policy of inaction "amounts to deliberate indifference to the plaintiff's constitutional right, and that the policy caused the violation, in the sense that the [municipality] could have prevented the violation with an appropriate policy." *Tsao*, 698 F.3d at 1143 (alteration in original) (internal quotations and citations omitted).

Beyond stating that the County was "deliberately indifferent" to the "misconduct alleged herein," [Compl. ¶ 43], Plaintiff identifies no "policy of inaction" that rises to show deliberate indifference towards his constitutional rights, nor a policy that could have prevented the alleged violation. Beyond his first-step failure to identify any relevant omission, Plaintiff also does not plead any facts suggesting that the County "was on actual or constructive notice that its omission would likely result in a constitutional violation." *Id.* at 1145 (quoting *Gibson v. Cnty. of Washoe, Nev.*, 290 F.3d 1175, 1186 (9th Cir. 2002)).

### iii. Failure to Train Theory

Under "limited circumstances," the failure to train municipal employees can sustain a *Monell* claim. *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 407, (1997). "Failure to train may constitute a basis for *Monell* liability where the failure amounts to deliberate indifference to the rights of those who deal with municipal employees." *Benavidez v. Cty. of San Diego*, 993 F.3d 1134, 1153 (9th Cir. 2021). "To allege a failure to train, a plaintiff must include sufficient facts to support a reasonable inference (1) of a constitutional violation; (2) of a municipal training policy that amounts to a deliberate indifference to constitutional rights; and (3) that the constitutional injury would not have resulted if the municipality properly trained their employees." *Id.*

"A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). Though Plaintiff asserts various legal conclusions promoting a failure to train theory, [Compl. ¶¶ 40–44], like his other *Monell* sub-theories,

Plaintiff alleges no facts identifying any municipal training policy that rises to deliberate inference towards any asserted right. Of course, at this stage, Plaintiff need not offer proof of such deliberate indifference. But Plaintiff's pleadings do not even meet the bare minimum: aside from conclusory allegations that the County failed to train its employees, there are no facts relating to any allegations of constitutional violations that have occurred in the past or any facts relating to the training of County personnel. No inference can be drawn from the seemingly one-off alleged constitutional violation Plaintiff pleads in his complaint. *See, e.g.*, *Segura v. City of La Mesa*, 647 F. Supp. 3d 926, 938 (S.D. Cal. 2022) (granting motion to dismiss on a failure to train claim where plaintiff identified a single alleged unconstitutional incident).

### D. The Court Declines to Exercise Supplemental Jurisdiction Over the Common and State Law Claims

Because this Court has dismissed all claims over which it has federal jurisdiction, the Court declines to exercise supplemental jurisdiction to resolve the pleaded common and state law claims. *See* 28 U.S. Code § 1367(c)(3). Plaintiff may reassert those claims in any amended complaint.

### III. CONCLUSION

As explained, the Court dismisses Plaintiff's federal claims with leave to amend pursuant to Rule 12(b)(6). The Court declines to exercise supplemental jurisdiction to adjudicate the common law and Bane Act claims since the Court has dismissed the federal claims. Plaintiff may file any amended complaint by **Jan. 3, 2025**.

It is **SO ORDERED**.

Dated: December 13, 2024

Hon. Cathy Ann Bencivengo
United States District Judge