

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FLOYD MANLOVE<br><br>                                   Plaintiff,<br><br>v.<br><br>COUNTY OF SAN DIEGO, et al.,<br><br>                                  Defendants. | Case No.: 3:24-cv-0801-CAB-MMP<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**<br><br>[Doc. No. 22] |

On May 6, 2024, Plaintiff Floyd Manlove brought a lawsuit pursuant to 42 U.S.C. § 1983 and other causes against Defendants County of San Diego, San Diego County Sheriff's Deputies Dylan Olguin, Michael Alcarion, Airan Kunz, and Osmark Gonzalez, and Does 1–10 ("Defendants"). The Court granted Defendants' motion to dismiss. [Doc. No. 17.] Plaintiff filed a first amended complaint ("FAC"). [Doc. No. 18.] Defendants subsequently filed a motion to dismiss the FAC. [Doc. No. 22.] The Court **GRANTS** the motion in part and **DENIES** the motion in part.

## I.    FACTUAL ALLEGATIONS

The Court takes the alleged material facts as true and construes them in the light most favorable to Plaintiff. *Stoner v. Santa Clara Cnty. Off. of Educ.*, 502 F.3d 1116, 1120

24-CV-0801-CAB-MMP

(9th Cir. 2007). Except as noted below, the FAC alleges substantially similar facts to those in Plaintiff's initial complaint.

In the FAC, Plaintiff alleges that Defendant Gonzalez could clearly observe Plaintiff's movements as Defendant Olguin conducted the traffic stop. [FAC ¶ 17.] Plaintiff asserts that "objectively unreasonable and unlawful excessive force was applied" by Defendants Olguin, Alcarion, Kunz, and Gonzalez ("Deputy Defendants") as he attempted to exit the vehicle by his own volition. [*Id.* ¶ 21.] Plaintiff claims that a civilian witness captured a video of the incident, and the video allegedly shows Defendant Olguin "punch a non-resistant [Plaintiff] to the face at least 3 times causing bruising and bleeding to [Plaintiff's] face and nose." [*Id.* ¶ 22.] According to Plaintiff, he was then "pinned and brought down to the hard concrete by [Deputy Defendants]." [*Id.* ¶ 23.]

## II.    LEGAL STANDARD

At the pleading stage, the Court looks to whether Plaintiff has plausibly stated a claim: an exercise that draws on judicial experience and common sense. *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 995 (9th Cir. 2014). Fed. R. Civ. P. 12(b)(6) permits a party to file a motion to dismiss for "failure to state a claim upon which relief can be granted." "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Vague and conclusory allegations" concerning government involvement in civil rights violations are insufficient to withstand a motion to dismiss. *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

## III.    ANALYSIS

Plaintiff's FAC presents the same causes of action as the initial complaint: (1) Section 1983 violation, (2) *Monell* violation, (3) failure to intervene, (4) assault, (5), battery, (6) false arrest, and (7) Bane Act violation. The Court takes each of Plaintiff's claims in turn and analyzes Defendants' qualified immunity defense.

//

## A. Plaintiff's Fourth and Fourteenth Amendment Section 1983 Claims

Plaintiff alleges two Section 1983 claims based on the Fourth and Fourteenth Amendments. [FAC ¶ 27(a).] To state a Section 1983 claim, Plaintiff must allege that: (1) a right secured by the Constitution or laws of the United States was violated, and (2) a person acting under the color of state law committed the alleged violation. *West v. Atkins*, 487 U.S. 42, 48 (1988). Moreover, Plaintiff must specifically identify who caused the alleged violation. *See Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988) ("The inquiry into causation must be individualized to focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation.").

### i.    Fourth Amendment Unlawful Search/Seizure

Plaintiff's first constitutional claim is an alleged violation of his Fourth Amendment rights: that the individually named Deputies "seized, searched, arrested, and handcuffed" Plaintiff without probable cause. [FAC at ¶ 27(a).]

As discussed in the Court's prior order ruling on Defendants' first motion to dismiss, Defendants Olguin and Gonzalez had probable cause to make the initial stop, and Plaintiff failed to plead an unlawful arrest claim. [Doc. No. 17 at 5-6.] In other words, no constitutional infirmity plagued the arrest as pleaded. As it relates to the search, Plaintiff does not identify who searched his person or vehicle. [*See* FAC ¶ 25.] That itself renders Plaintiff's claim defective: Plaintiff must specifically allege who (even if it is a Doe defendant) faces causal responsibility for the constitutional violation alleged. *See Leer*, 844 F.2d at 633.

In the FAC, however, Plaintiff pleaded new facts regarding his allegation that Deputy Defendants used excessive force against him during the stop. The use of excessive force by a law enforcement officer may violate the Fourth Amendment's prohibition against unreasonable seizures. *Lowry v. City of San Diego*, 858 F.3d 1248, 1254 (9th Cir. 2017). The Court analyzes such claim under the Fourth Amendment's "reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 395 (1989).

In assessing the objective reasonableness of a particular use of force, the Court considers: (1) "the severity of the intrusion on the individual's Fourth Amendment rights by evaluating the type and amount of force inflicted," (2) "the government's interest in the use of force," and (3) the balance between "the gravity of the intrusion on the individual" and "the government's need for that intrusion." *Glenn v. Washington Cnty.*, 673 F.3d 864, 871 (9th Cir. 2011) (internal quotation marks and citations omitted).

### a.  The Type and Amount of Force

Analyzing the appropriate type and amount of force requires a case-by-case approach. *See Torres v. City of Madera*, 648 F.3d 1119, 1124 (9th Cir. 2011) (an excessive force inquiry is a "highly fact-intensive task for which there are no per se rules").  The Ninth Circuit has held that a jury could find that an officer's repeated punching of a physically non-resistant plaintiff in the face—actions leading to serious and painful claimed injuries—violates the Fourth Amendment. *Lolli v. Cnty. of Orange*, 351 F.3d 410, 417 (9th Cir. 2003).  Here, Plaintiff states that he voluntarily stepped out of the vehicle, and Deputy Olguin punched him in the face several times.  [FAC ¶¶ 20, 22.]  Plaintiff claims that Deputy Olguin's punches caused facial bleeding and led to injuries to his face, neck, and back.  [FAC ¶¶ 22, 25.]  Plaintiff has sufficiently pleaded that Defendant Olguin used an inappropriate type and amount of force during the stop.

Plaintiff also claims that Deputy Defendants brought Plaintiff down to the hard concrete, resulting in injuries that required medical care.  [FAC ¶ 23.]  The Ninth Circuit has held that "a physical tackle that results in severe injury may constitute a significant use of force." *Andrews v. City of Henderson*, 35 F.4th 710, 716 (9th Cir. 2022).   Plaintiff has sufficiently pleaded a Fourth Amendment violation that is plausible on its face regarding the alleged excessive force that the Deputy Defendants used to seize the Plaintiff.

### b.  The Government's Interest in the Use of Force

The Court assess the government's interest in the use of force by considering the three *Graham* factors: "(1) the severity of the crime at issue, (2) whether the suspect posed an immediate threat to the safety of the officers or others, and (3) whether the suspect was

24-CV-0801-CAB-MMP

actively resisting arrest or attempting to evade arrest by flight." *Glenn*, 673 F.3d at 872. (quoting *Graham*, 490 U.S. at 396).

At this pleading stage, the first factor weighs in Plaintiff's favor.  As alleged, Defendant Olguin initially stopped Plaintiff for a misdemeanor.  [FAC ¶ 16.]  Plaintiff alleges that Deputy Defendants did not find the glass pipe, methamphetamine, and collapsible baton until after using excessive force.  [FAC ¶¶ 23-24.]  Therefore, the Deputy Defendants' used force at a point in the seizure where the only information available was that Plaintiff lacked a front license plate—not that Plaintiff had a weapon in the vehicle or had illegal drugs on his person.  The Court must consider the "danger a suspect poses *at the time force is applied*." *S.R. Nehad v. Browder*, 929 F.3d 1125, 1136 (9th Cir. 2019) (emphasis added).

The second factor, "whether the suspect pose[d] an immediate threat to the safety of the officers or others," is "the most important single element of the three specified factors." *Chew v. Gates*, 27 F.3d 1432, 1441 (9th Cir. 1994).  Because this is an inquiry about objective reasonableness, objective factors must justify an officer's use of force out of fear for his safety.  *Est. of Strickland v. Nevada Cnty.*, 69 F.4th 614, 620 (9th Cir. 2023).  Here, Plaintiff claims that he voluntarily began to exit the vehicle before he was allegedly punched and tackled to the ground.  [FAC ¶¶ 20, 23.]  Although Plaintiff admits that he had a weapon in his vehicle, Plaintiff asserts that Deputy Defendants found the weapon after applying force.  [FAC ¶¶ 22, 24.]  Plaintiff's claimed lack of physical resistance also suggests that Plaintiff did not pose an immediate threat to the safety of the officers. Therefore, the second *Graham* factor weighs in Plaintiff's favor.

The third factor, whether Plaintiff resisted or attempted to evade arrest, weighs slightly in favor of Plaintiff.  Where the suspect passively resists arrest, a lesser degree of force is justified compared to situations in which the suspect actively resists arrest.  *See, e.g.*, *Glenn*, 673 F.3d at 875.  Here, Plaintiff concedes that he questioned the reason for the request to exit the vehicle and a dispute arose.  [FAC ¶ 19.]  However, Plaintiff asserts that after Defendant Olguin reached into the vehicle to open Plaintiff's door, Plaintiff attempted

to comply.  [FAC ¶ 20.]  Therefore, while Plaintiff initially offered some amount of verbal resistance, Plaintiff has not pleaded any facts that suggest he physically resisted arrest at the time of Deputy Defendants' application of force.  Taking the three *Graham* factors together, Plaintiff has plausibly alleged that the government did not have sufficient interest in its use of force against Plaintiff.

### c.  The Balance of Interests

The final step of the excessive force inquiry requires the Court to balance the gravity of the intrusion on Plaintiff's Fourth Amendment rights against the government's need for that intrusion.  *Lowry v. City of San Diego*, 858 F.3d 1248, 1260 (9th Cir. 2017) (quoting *Glenn*, 673 F.3d at 871.)  Here, the government's interest in the use of force to stop a traffic infraction did not justify the alleged level of force used by the Deputy Defendants.  For the foregoing reasons, Defendants' motion to dismiss Plaintiff's Fourth Amendment Section 1983 claim against Deputy Defendants is **DENIED**.

### ii.    Fourteenth Amendment Excessive Force Claim

The FAC does not plead sufficiently different facts regarding Plaintiff's Fourteenth Amendment excessive force claim than those in the initial complaint.  Therefore, the Court's prior analysis of the Fourteenth Amendment applies here.  [Doc. No. 17 at 7–8.] As such, Plaintiff's Fourteenth Amendment excessive force claim against all Defendants is **DISMISSED** with prejudice.

### B. Plaintiff's Failure to Intervene Under Both the Fourth and Fourteenth Amendments Claims

Plaintiff also alleges what appears to be constitutional violations based on a failure to intervene theory.  In his FAC, Plaintiff states that Defendants Alcarion, Kunz, and Gonzalez failed to intervene as Defendant Olguin applied excessive force by punching Plaintiff multiple times.  [FAC ¶ 22.]  If a police officer has an opportunity to intervene in another officer's unconstitutional actions, that officer can be held liable for failing to do so.  *United States v. Koon*, 34 F.3d 1416, 1447 (9th Cir. 1994), rev'd on other grounds, 518 U.S. 81 (1996) ("Police officers have a duty to intercede when their fellow officers violate

the constitutional rights of a suspect or other citizen.")  Resultingly, the Court **DENIES** Defendants' motion to dismiss with regards to Plaintiff's failure to intervene claims under the Fourth Amendment.

### C. Defendants' Qualified Immunity Defense

Qualified immunity protects government officials from civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Chappell v. Mandeville*, 706 F.3d 1052, 1056 (9th Cir. 2013) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  The qualified immunity inquiry has two prongs: "(1) whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the official's conduct violated a constitutional right; and (2) if so, whether the right was clearly established in light of the specific case." *Robinson v. York*, 566 F.3d 817, 821 (9th Cir. 2009) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).

Regarding the first prong of the qualified immunity analysis, the Court finds that Plaintiff's FAC pleads facts sufficient to mount a cognizable Fourth Amendment violation with regards to the named Deputies' conduct—specifically that the alleged use of force against a passive, non-resistant arrestee was unreasonable.  *See Rice v. Morehouse*, 989 F.3d 1112, 1125-26 (9th Cir. 2021).  Therefore, Plaintiff has met the first requirement to survive Defendants' qualified immunity challenge regarding Deputy Defendants' conduct.

Under the second prong of the qualified immunity analysis, courts "consider whether a reasonable officer would have had fair notice that the action was unlawful." *Chappell*, 706 F.3d at 1056–57.  At the motion to dismiss stage, "dismissal is not appropriate unless we can determine, based on the complaint itself, that qualified immunity applies." *Polanco v. Diaz*, 76 F.4th 918, 925 (9th Cir. 2023) (quoting *Groten v. California*, 251 F.3d 844, 851 (9th Cir. 2001).

#### a.  Defendant Olguin's Punch

A reasonable officer would have known that punching an allegedly non-resistant arrestee in the face multiple times was excessive. *See Davis v. City of Las Vegas*, 478 F.3d

1048 (9th Cir. 2007). *Davis v. City of Las Vegas* informs law enforcement officers of their obligation under the Constitution to refrain from using excessive force against such an individual. *See id*. In *Davis*, the Ninth Circuit found that a police officer was not entitled to qualified immunity after punching an unarmed arrestee in the face during an arrest where the arrestee never attempted to harm anyone else. *See id*. Like Plaintiff here, the plaintiff in *Davis* was "somewhat uncooperative." *Id*. at 1056. Although the plaintiff in *Davis* was handcuffed at the time of the application of force, the core overlap here is that there was, as alleged, no threat of violence and, other than minimal verbal resistance, eventual voluntary compliance with Olguin's commands. *Id*. at 1051. As alleged, Deputy Olguin punched Plaintiff in the face multiple times, even though Plaintiff offered no physical resistance. [FAC ¶ 22.] At this juncture, Plaintiff has pleaded that a reasonable officer in Defendant Olguin's position would have known that the conduct in which he engaged constituted excessive force. The Court **DENIES** Defendants' motion to dismiss based on qualified immunity with respect to Defendant Olguin for allegedly punching Plaintiff, without prejudice to it being reasserted on summary judgment or at trial.

### b. Deputy Defendants' Tackle

In *Blankenhorn v. City of Orange*, 485 F.3d 463 (9th Cir. 2007), police officers tackled an unrestrained and physically non-resistant Plaintiff during an arrest. The Ninth Circuit found the law was clearly established in that gang-tackling a physically non-resistant Plaintiff could have been unconstitutional and denied giving the officers qualified immunity. *Id*. at 482. Like in *Blankenhorn*, all four named Defendants here tackled an allegedly unrestrained and physically non-resistant Plaintiff. [FAC ¶ 23.] At this juncture, Plaintiff has pleaded that a reasonable officer in Deputy Defendants' position would have known that tackling a non-resistant Plaintiff was not objectively reasonable in light of clearly established law. The Court **DENIES** Defendants' motion to dismiss based on qualified immunity with respect to Deputy Defendants for allegedly tackling Plaintiff, without prejudice to it being reasserted on summary judgment or at trial.

//

24-CV-0801-CAB-MMP

### D. Plaintiff's *Monell* Claim Against the County and Its Employees

The FAC does not allege sufficiently different facts for Plaintiff's *Monell* claim than those in the dismissed initial complaint. The FAC still has no facts indicating what involvement Does 1–10 had in any alleged constitutional violation. The Court's analysis for the *Monell* claim remains the same as in the Court's initial motion to dismiss. [Doc. No. 17 at 9-12.] The Court **GRANTS** Defendants' motion to dismiss with respect to Plaintiff's *Monell* claim against all parties.

### E. Plaintiff's Common and State Law Claims

Federal courts have the discretion to exercise supplemental jurisdiction over all claims that are "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Plaintiff's state law claims arise from the same traffic stop and alleged use of force. The Court exercises supplemental jurisdiction to adjudicate the common law and Bane Act claims for the first time here since the Court did not reach those claims in Defendants' initial motion to dismiss.

#### a. Assault and Battery

Plaintiff makes state law claims for assault and battery based on the Deputy Defendants' alleged use of force in his arrest. Under California law, claims for assault and battery against police officers are resolved under the same liability standard as 42 U.S.C. § 1983 excessive force causes of action. *See Saman v. Robbins*, 173 F.3d 1150, 1156 n.6 (9th Cir. 1999). As discussed above in Section A, Plaintiff has plausibly alleged a claim that Deputy Defendants used unreasonable force under Section 1983. Therefore, Plaintiff may bring his assault and battery claims against Deputy Defendants.

#### i. Assault

Under California law, a claim for assault must allege: "(1) that [D]efendant[s] intended to cause harmful or offensive contact, or the imminent apprehension of such contact, and (2) that [P]laintiff was put in imminent apprehension of such contact." *Brooks v. United* States, 29 F. Supp. 2d 613, 617 (N.D.Cal. 1998) (citing Restatement (Second) of

24-CV-0801-CAB-MMP

Torts § 21 (1965)).  Here, Plaintiff has pleaded that Deputy Defendants intended to cause harmful contact and Plaintiff was put in imminent apprehension of such contact.  [FAC ¶ 21-23, 49.]  Defendants' motion to dismiss the state law claim for assault against the Deputy Defendants is **DENIED**.

### ii.  Battery

Plaintiff also makes a state law claim for battery based on Deputy Defendants allegedly slamming Plaintiff on the ground.  Under California law, the elements of a battery claim are as follows: (1) the defendant intentionally did an act that resulted in harmful or offensive contact with the plaintiff's person, (2) the plaintiff did not consent to the contact, and (3) the contact caused injury, damage, loss or harm to the plaintiff.  *Tekle ex rel. Tekle v. U.S.*, 511 F.3d 839, 855 (9th Cir. 2007).  Here, Plaintiff has pleaded that Deputy Defendants tackled Plaintiff resulting in harmful contact, Plaintiff did not consent to the contact, and Plaintiff suffered injuries that required medical attention from the alleged tackle.  [FAC ¶ 19-23.]  Defendants' motion to dismiss the state law claim for battery against the Deputy Defendants is **DENIED**.

### b.  False Arrest

Plaintiff alleges a state law claim that Deputy Defendants falsely arrested and imprisoned Plaintiff.  The tort consists of the "nonconsensual, intentional confinement of a person, without lawful privilege, for any appreciable length of time, however short."  *Alterauge v. Los Angeles Turf Club*, 97 Cal. App. 2d 735, 736 (1950).  As analyzed in the Court's initial motion to dismiss, Deputy Defendants had probable cause for the arrest.  [Doc. No. 17 at 5–6.]  Plaintiff concedes facts indicating probable cause for the arrest, [FAC ¶ 24], and has not pleaded new facts to change the Court's probable cause analysis for the arrest.  Since no additional facts could change this analysis, the Court **DISMISSES** Plaintiff's false arrest claim against all parties with prejudice.  *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1051 (9th Cir. 2008) ("Dismissal without leave to amend is proper if it is clear that the complaint could not be saved by amendment.")

//

10

24-CV-0801-CAB-MMP

### c. Bane Act

California's Bane Act creates a right of action against persons who "interfere[] by threat, intimidation, or coercion . . . with the exercise or enjoyment by any individual . . . of rights secured by the Constitution or laws of the United States."  Civ. Code § 52.1(b). The Bane Act requires not only the existence of a constitutional violation but also the defendant's specific intent to violate a person's rights.  *See Murchison v. Cnty. of Tehama*, 69 Cal. App. 5th 867, 896 (2021); *see also Reese v. Cnty. of Sacramento*, 888 F.3d 1030, 1043 (9th Cir. 2018).

Plaintiff alleges that Deputy Defendants violated his constitutional right to freedom from racial discrimination under the Fourteenth Amendment.  "Because section 1983 incorporates the equal protections standards that have developed in fourteenth amendment jurisprudence," in order to prevail on a Section 1983 claim alleging racial discrimination, Plaintiff must first prove that Defendants purposefully discriminated against him because of his race.  *Lowe v. City of Monrovia*, 775 F.2d 998, 1010 (9th Cir. 1985) (citing *Pers. Adm'r of Massachusetts v. Feeney*, 442 U.S. 256, 272 (1979) and *Washington v. Davis*, 426 U.S. 229, 239–42, (1976)).  Plaintiff does not meet the baseline requirement of specifying his race in the FAC, nor does he plead how any Defendant had the specific intent to violate Plaintiff's Fourteenth Amendment rights. Because the Court did not reach the racial discrimination claim in the initial complaint, the Court **DISMISSES** Plaintiff's Bane Act claim against all parties without prejudice.

### IV.    CONCLUSION

For the reasons discussed above, the Court:

(1) **DENIES** the motion to dismiss Plaintiff's Section 1983 claims for Fourth Amendment excessive force violations against the Deputy Defendants;

(2) **DENIES** the motion to dismiss Plaintiff's Section 1983 claims for failure to intervene against Defendants Alcarion, Kunz, and Gonzalez;

24-CV-0801-CAB-MMP

(3)  **GRANTS** the motion to dismiss (a) the Fourteenth Amendment claims against all parties, (b) *Monell* claims against all parties, and (c) false arrest claims against all parties with prejudice;

(4)  **DENIES** the motion to dismiss the assault and battery claims against the Deputy Defendants;

(5)  **GRANTS** the motion to dismiss the assault and battery claims against the Doe Defendants; and

(6)  **GRANTS** the motion to dismiss the Bane Act claims without prejudice.

Should Plaintiff choose to file a second amended complaint to assert the Bane Act Claim, Plaintiff may do so by June 5, 2025.   If Plaintiff does not file a second amended complaint, Defendants will file an answer to the operative first amended complaint by June 19, 2025.

It is **SO ORDERED**.

Dated:  May 8, 2025

_____
Hon. Cathy Ann Bencivengo
United States District Judge

24-CV-0801-CAB-MMP